**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARY FRELIGH and WILLIAM FRELIGH, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>NATIONWIDE MUTUAL FIRE INSURANCE )<br>COMPANY, )<br>)<br>Defendant. )<br>_____ ) | No. 2:21-cv-1114-DCN<br><br>**ORDER** |

The following matter comes before the court on defendant Nationwide Mutual Fire Insurance Company's ("Nationwide") motion for judgment on the pleadings, ECF No. 8. For the reasons set forth below, the court denies the motion

## I. BACKGROUND

This insurance coverage dispute arises out of a June 25, 2020 car accident in which plaintiff Mary Freligh ("Mrs. Freligh") was seriously injured. Shortly after the collision, the insurance company for the at-fault driver tendered to Mrs. Freligh an amount equivalent to its insured's policy limits, $300,000. According to the complaint, Mrs. Freligh has incurred over $400,000 in medical expenses as a result of the accident, an amount that continues to grow. Mrs. Freligh's husband, William Freligh ("Mr. Freligh") (together with Mrs. Freligh, "plaintiffs"), has purchased car insurance from Nationwide for nearly thirty years. At the time of Mrs. Freligh's accident, Mr. Freligh was insured under a Nationwide insurance policy with a policy period of May 1, 2020 to November 1, 2020, labeled Policy No. 6139V001313 (the "2020 Policy"). ECF No. 8-3. The 2020 Policy extended liability coverage to the vehicle in the accident.

1

The 2020 Policy did not include any underinsured motorist ("UIM") coverage. S.C. Code Ann. § 38-77-160 requires an automobile insurer, like Nationwide, to offer UIM coverage up to the limits of its insured's liability coverage at the time its insured purchases a policy. In 1999, Mr. Freligh purchased a car insurance policy from Nationwide, labeled Policy No. 6139K044846 (the "1999 Policy"). At that time, Nationwide supplied Mr. Freligh with a form explaining the nature of UIM insurance and offering UIM coverage with respect to the 1999 Policy (the "Offer Form"). ECF No. 8-2. Mr. Freligh indicated that he did not wish to purchase UIM coverage on the Offer Form and signed it. Id. According to Nationwide, Mr. Freligh renewed the 1999 Policy at the end of each policy period for twenty-one years, up through the date of the accident, meaning that the 2020 Policy is the result of a twenty-one-year string of policy renewals.

On March 22, 2021, plaintiffs filed this action against Nationwide in the Berkeley County Court of Common Pleas, seeking reformation of the 2020 Policy as well as attorneys' fees and costs. ECF No. 1-1, Compl. Plaintiffs specifically contend that Nationwide failed to make a meaningful offer of UIM insurance with respect to the 2020 Policy. On April 15, 2021, Nationwide removed the action to this court. ECF No. 1. On June 25, 2021, Nationwide filed a motion for judgment on the pleadings. ECF No. 8. On July 9, 2021, plaintiffs responded, ECF No. 11, and on July 16, 2021, Nationwide replied, ECF No. 12. As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

pleadings." Courts follow "a fairly restrictive standard" in ruling on 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Wright & Miller, Federal Practice and Procedure § 1368 (3d ed. 2011). Therefore, "a Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." Deutsche Bank Nat'l Trust Co. v. I.R.S., 361 F. App'x 527, 529 (4th Cir. 2010); see also Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) ("[W]e are mindful that a Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."). In resolving a motion for judgment on the pleadings, the court may consider only the pleadings and exhibits attached thereto, relevant facts obtained from the public record, and exhibits to the motion that are "integral to the complaint and authentic." Massey, 759 F.3d at 347.

At this stage, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. In so doing, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011); see also BET Plant Servs., Inc. v. W.D. Robinson Elec. Co., 941 F. Supp. 54, 55 (D.S.C. 1996) ("[A] defendant may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the plaintiff."). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although Rule 8(a)(2) requires only a "short and plain statement of the claim

showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III.  DISCUSSION

In its motion, Nationwide contends that the Offer Form, supplied by Nationwide and signed by Mr. Freligh in 1999, constitutes a meaningful offer of UIM insurance as a matter of law.[1] Plaintiffs disagree, arguing that Nationwide's twenty-one-year-old offer of UIM coverage is not meaningful with respect to the 2020 Policy. Because the court cannot resolve this issue without the benefit of evidence, it must deny Nationwide's motion.

S.C. Code Ann. § 38-77-160 requires automobile insurers to offer "at the option of the insured, [UIM] coverage up to the limits of the insured liability coverage[.]" The South Carolina Supreme Court has explained that a satisfactory offer under § 38-77-160 must be "meaningful." State Farm Mut. Auto. Ins. Co. v. Wannamaker, 354 S.E.2d 555, 557 (S.C. 1987). Where an insurer fails to extend a meaningful offer of UIM coverage, "the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured." McWhite v. ACE Am. Ins. Co., 412 F. App'x 584, 587 (4th Cir. 2011) (quoting Ray v. Austin, 698 S.E.2d 208, 212 (S.C. 2010)). The South Carolina Supreme Court has made clear that "[t]he purpose of

---

[1] Because plaintiffs reference the Offer Form in their complaint and do not challenge its authenticity, the court may consider it in resolving Nationwide's motion. See Massey, 759 F.3d at 347.

4

requiring automobile insurers to make a meaningful offer of additional [ ] UIM coverage is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs." Floyd v. Nationwide Mut. Ins. Co., 626 S.E.2d 6, 12 (S.C. 2005). "All law with respect to [the meaningful offer requirement] must be applied so as to effectuate this stated purpose." Grinnell Corp. v. Wood, 698 S.E.2d 796, 799 (S.C. 2010).

In Wannamaker, the Supreme Court established a four-part test to determine whether an insurer's offer of UIM coverage passes muster. 354 S.E.2d at 556. Thereafter, the South Carolina legislature enacted S.C. Code § 38-77-350(A), which prescribes requirements for a standard offer form an insurer may supply to its policyholder to ensure that a meaningful offer of UIM coverage is made. An insurer may satisfy the meaningful offer requirement either way, through satisfaction of Wannamaker's four-part test or compliance with § 38-77-350(A). McWhite, 412 F. App'x at 587.

Nationwide contends that it made a meaningful offer pursuant to either analysis. The court begins with Wannamaker. For an insurer's offer of UIM coverage to be meaningful under Wannamaker,

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

354 S.E.2d at 556. In employing this test, South Carolina courts look to the particular circumstances of the offer at the time it was made, such as the sophistication of the insured, Croft v. Old Republic Ins. Co., 618 S.E.2d 909, 918 (S.C. 2005), and the context

5

in which the offer was presented, Dewart v. State Farm Mut. Auto. Ins. Co., 370 S.E.2d 915, 917 (S.C. Ct. App. 1988).  The insurer bears the burden to show that it made a meaningful offer.  Wannamaker, 354 S.E.2d at 556.

Here, plaintiffs "agree that the [Offer Form] specified the limits of the optional UIM coverage . . . , accurately described the nature of UIM coverage, and advised the insured regarding the additional premium for the optional coverage," in compliance with Wannamaker's test.  ECF No. 11 at 4.  However, plaintiffs contend that the Offer Form, supplied by Nationwide and signed by Mr. Freligh in 1999, is not "meaningful" with respect to the 2020 Policy, given the changes to Mr. Freligh's insurance coverage that occurred during the twenty-one-year interim.  For example, plaintiffs note that the vehicles insured under the 1999 Policy are not the same vehicles insured by the 2020 Policy, that the 1999 Policy's policy number is different from that of the 2020 Policy, and that Mrs. Freligh was not a named insured on the 1999 Policy.  In other words, plaintiffs argue that these changes render the 1999 Offer Form not applicable to the 2020 Policy.  Plaintiffs frame their argument within Wannamaker, stating that Nationwide's "notification process was not commercially reasonable[,] such that [it] failed to intelligibly advise Plaintiffs about UIM coverage."  Id.  But plaintiffs' argument does not fit comfortably within Wannamaker's framework.  As South Carolina case law makes clear, Wannamaker's test focuses on whether an offer was meaningful at the time it was made.  See, e.g., Grinnell, 698 S.E.2d at 800.  The issue plaintiffs' argument raises is not whether Nationwide's offer of UIM coverage was meaningful when it was made in 1999; instead, it raises whether Nationwide's 1999 offer applies with equal force to the 2020 Policy, given the twenty-one-year gap between the two and the changes that occurred

during that time. That issue is more appropriately resolved under S.C. Code § 38-77-350(C).

S.C. Code § 38-77-350(C) provides: "An automobile insurer is not required to make a new offer of [UIM] coverage on any automobile insurance policy which renews, extends, changes, supersedes, or replaces an existing policy." The South Carolina Supreme Court recently acknowledged that because "not all changes are the same," the statute's use of the word "changes" is ambiguous. Progressive Direct Ins. Co. v. Reeves, 831 S.E.2d 422, 424 (S.C. 2019). Discerning legislative intent, the Supreme Court held that an insurer must reoffer UIM insurance "when there has been a material change to the policy." Id. (emphasis in original). South Carolina courts consider some policy changes immaterial, meaning that they do not trigger an insurer's duty to reoffer UIM coverage. See id. at 425 (finding the addition of a named insured an immaterial change); Smith v. S.C. Ins. Co., 564 S.E.2d 358, 362 (S.C. Ct. App. 2002) (finding the addition of a second vehicle an immaterial change). Other changes, however, are considered "material" and thus trigger the insurer's duty to reoffer UIM coverage with respect the changed policy. See McDonald v. S.C. Farm Bureau Ins. Co., 518 S.E.2d 624, 626 (S.C. Ct. App. 1999) (finding the substitution of the named insured to be a material change akin to "the creation of a new insurance policy," triggering the insurer to reoffer UIM coverage). Ultimately, a determination of whether a policy change is "material" is a fact-intensive inquiry that depends on individualized circumstances. See Reeves, 831 S.E.2d at 424.

Resolving that issue here would require the court to consider the relevant evidence, which it cannot do on a motion for judgment on the pleadings. For example, plaintiffs point out that the 1999 Policy and the 2020 Policy have distinct policy numbers.

The court cannot discern the materiality of this policy change without the benefit of evidence. Evidence on the topic may reveal that the change was purely administrative and therefore immaterial, or it may evince a change more fundamental, such as Mr. Freligh's cancellation of one policy and purchase of another. Nationwide states that "the policy number changed when Nationwide transitioned to a new, standard policy form" and supports that factual contention with the affidavit of Michelle Snell, a "Consultant Manager-Compliance" for Nationwide. ECF No. 12 at 5 (citing ECF No. 12-1). But the court cannot consider such evidence on a motion for judgment on the pleadings, and for good reason. It would be inappropriate—and indeed contrary to well-settled law—to accept Nationwide's evidence unchecked and resolve its motion on that basis, without affording plaintiffs the opportunity to scrutinize Nationwide's evidence and gather evidence of their own through discovery. That is precisely why the court, at this stage, "must accept as true all of the allegations contained in [the] complaint," Iqbal, 556 U.S. at 678, and restrict its review of Nationwide's motion to the pleadings and documents integral thereto, Massey, 759 F.3d at 347. The same is true with respect to the other policy changes to which plaintiffs point, such as the alleged addition of Mrs. Freligh to the policy and the substitution of covered vehicles. In short, the court is without a proper evidentiary basis from which it might definitely conclude that the offer of UIM coverage Nationwide made to Mr. Freligh in 1999 constitutes a "meaningful offer" with respect to the 2020 Policy.[2] The court's role at this juncture is merely to "test[] the sufficiency of the complaint," not to consider evidence or resolve issues on their merits. Id. at 353.

---

[2] Moreover, even were the court to analyze this issue under Wannamaker, it would deny Nationwide's motion. South Carolina law is clear that whether an insurer satisfies Wannamaker is "a question of fact" dependent upon the totality of the

8

The court faces the same problem in determining whether Nationwide satisfied the meaningful offer requirement pursuant to § 38-77-350(A). Under that statute, an insured makes a meaningful offer of UIM coverage if it supplies to its insured a form that contains:

> (1) a brief and concise explanation of the coverage,
>
> (2) a list of available limits and the range of premiums for the limits,
>
> (3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires,
>
> (4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,
>
> (5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

S.C. Code Ann. § 38-77-350(A). Where an insurer demonstrates that its insured declined UIM pursuant to such a form, it is entitled to a "conclusive presumption" that "the insured made a knowing waiver of the option to purchase additional coverages." Grinnell, 698 S.E.2d at 799.

Nationwide contends that the Offer Letter satisfies § 38-77-350(A) and thus that it is entitled to a conclusive presumption that it presented to Mr. Freligh a meaningful offer of UIM coverage. Again, though, the court's inquiry under § 38-77-350(A) focuses on the offer itself at the time it was made. Even if the court were to find that the Offer Form satisfies § 38-77-350(A), it would still be required to determine whether the 1999

---

circumstances. Cohen, 737 S.E.2d at 872. As such, the issue is more appropriately handled on summary judgment, at which point the court will have the benefit of relevant evidence.

Offer Form applies to the 2020 Policy under § 38-77-350(C).  As the court explained above, the court cannot do so at this stage without the benefit of evidence.  Therefore, the court need not determine whether the Offer Form satisfies § 38-77-350(A) because it must deny Nationwide's motion either way.[3]

In sum, granting Nationwide judgment as a matter of law would require the court to determine whether its 1999 offer of UIM coverage to Mr. Freligh applies under S.C. Code Ann. § 38-77-350(C) to the insurance policy he purchased twenty-one years later.  Unable to consider evidence as this stage, the court cannot resolve that issue.  The court will be better positioned to resolve the issues presented in Nationwide's motion after the parties engage in discovery and give the court the benefit of an evidentiary record.  Until that time, the court must deny Nationwide's motion.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 30, 2021**
**Charleston, South Carolina**

---

[3] Nationwide contends that the 1999 version of § 38-77-350(A) applies to this case, while plaintiffs urge the court to apply the current version.  For the reasons discussed above, the court need not resolve this dispute.